STATE v. CHARLES D. PHILLIPS.

(Filed 28 February, 1962.)

1. Forgery § 1—

Forgery is the false making or alteration of an instrument in writing which is apparently capable of effecting a fraud, which making or alteration is with fraudulent intent.

2. Same—

If the signature to a check is that of a real person, the State, in order to make out a case of forgery, must prove that the signature was made without authority of such person, since otherwise authority will be presumed and the instrument would not be a false instrument, while if the signature is that of a fictitious person the signature must have been affixed of necessity without authority.

**3. Forgery § 2—**

That the signature to an instrument is that of a fictitious person may be established by either direct or circumstantial evidence, and evidence that there was no account in the drawee bank in the name of the person purported to be the maker of a check is some evidence the purported maker is a fictitious person.

**4. Same—**

Evidence that defendant aided in the execution of a purported check sufficient in form to constitute a negotiable instrument payable to order, without evidence that the purported maker is a fictitious person but to the contrary that he was an actual person, and without evidence that the porported maker had not authorized defendant to make the check, is insufficient to be submitted to the jury on a charge of forgery.

WINBORNE, C.J., not sitting.

APPEAL by defendant from *Riddle, S.J.,* September 1961 Criminal Term of BUNCOMBE.

This is a criminal action. The bill of indictment alleges that Charles Phillips, Robert Fletcher Jarrett and Charles Oscar Taylor "unlawfully and feloniously, of his own head and imagination, did wittingly and falsely make, forge, and counterfeit, and did wittingly assent to the falsely making, forging and counterfeiting a certain check or order for the payment of money, which said forged check or order is as follows, to-wit:

ASHEVILLE, N. C.              August 18, 1961              No. 684

FIRST NATIONAL BANK AND TRUST COMPANY
PAY TO THE ORDER OF FRANK JOHNSTON
Twenty Four Dollar 70/100 DOLLARS              $24.70
              (Signed)    Frank Johnston

with intent to defraud, . . ." There is also a count of uttering the check described.

It is inferred from the record that Jarrett and Taylor pleaded guilty or were tried previously. In any event Phillips (hereinafter referred to as defendant) was tried separately. He pleads not guilty.

The evidence for the State tends to show: About 8:30 P.M. on Saturday, 18 August 1961, defendant and Jarrett entered a grocery store operated by Mr. and Mrs. Tom Buckner at Barnardsville, N. C. Mr. Buckner was away, and Mrs. Buckner was in charge. Jarrett and defendant were strangers to her. Jarrett ordered $2.00 worth of gasoline. When Mrs. Buckner went outside to deliver the gasoline, defendant reduced the amount to $1.00 and stated that he would take the others where they planned to go. Taylor had been in the store but had gone

outside. After delivering the gasoline Mrs. Buckner re-entered the store and filled a large order of groceries and other merchandise for Jarrett. The purchases amounted to $24.70. Jarrett told defendant to write a check. Defendant filled in the check described in the bill of indictment and passed it to Jarrett. Jarrett signed it. On the original check the payee is "Frank Johnston," the purported maker "Frank Johnson." Defendant handed it to Mrs. Buckner. Mrs. Buckner requested defendant to put his address on the back of the check. He complied by writing thereon what appears to be "Pensacola, N. C., cfo Peney Thadgiller." As defendant drove away Mrs. Buckner noted the license number of the car. The following Monday Mr. Buckner took the check to the bank on which it was drawn. It was not deposited but was presented for payment. He "didn't receive any money for that check." The bank put a "tag" on it. (What appeared on the "tag" is not disclosed by the record.) By tracing the license plate on the car defendant was apprehended. It belonged to Frank Messer. Defendant told Messer in the presence of a deputy sheriff that he had taken it from Messer's car and put it on his own. Defendant told the deputy he had bought his car from Frank Johnson. He denied writing the check.

At the close of the State's evidence defendant moved for nonsuit. The motion was overruled. Defendant declined to offer evidence and renewed his motion for nonsuit. The motion was then allowed on the count of uttering and denied on the count of forgery.

The jury returned verdict of guilty. Judgment was entered imposing an active term in State's prison.

Defendant appealed.

*Attorney General Bruton and Assistant Attorney General McGalliard for the State.*
*S. Thomas Walton for defendant.*

MOORE, J. The court erred in denying defendant's motion for nonsuit.

Three elements are necessary to constitute the offense of forgery: (1) There must be a false making or alteration of some instrument in writing; (2) there must be a fraudulent intent; and (3) the instrument must be apparently capable of effecting a fraud. *State v. Dixon,* 185 N.C. 727, 117 S.E. 170.

The State's evidence is sufficient to justify the inference that defendant aided and abetted Jarrett in the execution of the purported check. The check is sufficient in form to constitute a negotiable instrument payable "to order." G.S. 25-14. But the State offered no evidence

tending to show the falsity of the instrument, *i.e.*, that it was executed without authority.

If the name signed to a negotiable instrument, or other instrument requiring a signature, is fictitious, of necessity, the name must have been affixed by one without authority, and if a person signs a fictitious name to such instrument with the purpose and intent to defraud — the instrument being sufficient in form to import legal liability — an indictable forgery is committed. However, if the purported maker is a real person and actually exists, the State is required to show not only that the signature in question is not genuine, but was made by defendant without authority. "To show that the defendant signed the name of some other person to an instrument, and that he passed such instrument as genuine, is not sufficient to establish the commission of a crime. It must still be shown that it was a false instrument, and this is not established until it is shown that a person who signed another's name did so without authority." *State v. Dixon, supra.*

"Evidence that the name signed to an instrument is that of a fictitious person is admissible to prove that the instrument is a forgery, and any circumstantial evidence tending to prove that the name is that of a fictitious person is likewise admissible. Thus persons so situated that they would probably know the signer if he existed may testify that they do not know of any such person. Similarly, evidence as to the result of inquiries made for persons whose names appear on an instrument is admissible to show their nonexistence, although the person making the inquiries may have been unacquainted with the place, or the search may not have been extensive. Likewise evidence is admissible as to the result of an inspection of the assessment rolls of the town where such persons were alleged to live. In the case of a check it may be shown that the drawer had no account with the bank on which it was drawn, or was not a customer thereof; . . ." 37 C.J.S., Forgery, s. 82, p. 94. ". . .(T)he testimony of a proper officer of the bank on which a check was drawn that the purported maker of such check had no account in the bank is admissible as tending to prove that such purported maker was a fictitious person." 49 A.L.R. 2d, Anno: Forgery — Fictitious name, s. 5(a), p. 879. And it has been held that such testimony is *prima facie* evidence of the nonexistence of the maker. *ibid*, s. 5(b), p. 880.

Where defendant signs the name of another person to an instrument, there is no presumption of want of authority. On the contrary, "Where it appears that accused signed the name of another to an instrument, it is presumed that he did so with authority." 37 C.J.S., Forgery, s. 80 b, p. 91. Of course, it is not a presumption of law. For an example

of facts sufficient to make out a *prima facie* case of want of authority, see *State v. Coleman,* 253 N.C. 799, 117 S.E. 2d 742.

In the instant case the State offered no evidence tending to show that Frank Johnson, the purported maker of the check in question, is a fictitious person. There is no testimony from an officer or employee of the First National Bank and Trust Company of Asheville, the bank on which the check is drawn, that Frank Johnson is unknown to and has no account in that bank. There is merely the testimony of Mr. Buckner that no money was received "for that check." It may well be that the account of Frank Johnson, if any, had insufficient funds on deposit for payment of the check, or that Johnson had stopped payment. There was no testimony from any of the State's witnesses that they had made any effort to locate Johnson or had made inquiries concerning his whereabouts or existence. Defendant told the deputy sheriff he had purchased his car from Frank Johnson. This tends to show that Johnson is a real person. Yet, apparently no effort was made to locate him. It is certain he was not called as a witness to testify that he had not authorized the making of the check.

The State makes no showing that the signing of the check was unauthorized and false. The court should have allowed the motion to nonsuit.

The judgment below is

Reversed.

WINBORNE, C.J., not sitting.